59. Pursuant to its right under the Subcontract, Northrop Grumman has demanded that DynCorp provide the records in support its invoices.

60. By its continued refusal to provide records in support of its invoices, despite a clear contractual obligation to do so, DynCorp has breached the Subcontract and has created an actual controversy regarding Northrop Grumman's right to obtain such records.

61. Northrop Grumman's right to these records is established by Clause 34.b and Articles VIII.A.2(a)(1) and XIV.H.5 of the Subcontract, which constitutes an "instrument of writing," as provided in Va. Code § 8.01-184.

62. Northrop Grumman does not have an adequate remedy at law, as the injury that Northrop Grumman has suffered is not fully compensable by monetary damages. DynCorp's failure to supply the requested records has harmed Northrop Grumman's relationship with its primary customer, the Department of Defense, and has harmed its reputation through negative media coverage and public attention.

63. Northrop Grumman seeks a declaration from the Court that (1) DynCorp has an obligation under the Subcontract to maintain records to substantiate all invoices, (2) DynCorp has an obligation to provide such records to Northrop Grumman upon its request, and (3) DynCorp has an obligation to repay Northrop Grumman for any amounts Northrop Grumman may be required to pay the Government as a result of any improper invoices submitted by DynCorp.

### COUNT II – SPECIFIC PERFORMANCE

64. Plaintiffs reallege paragraphs 1 through 55 above and incorporates them as paragraph 64 of Count II.

65. DynCorp has failed to comply with Articles VIII.A.2(a)(1) and XIV.H.5 and Clause 34.b of the Subcontract to maintain records in support of its invoices and to provide those records when requested by Northrop Grumman.

66. Northrop Grumman requires the supporting documentation within DynCorp's control underlying each labor charge to ensure the accuracy of those labor charges.

67. Northrop Grumman does not have an adequate remedy at law, as the injury that Northrop Grumman has suffered is not compensable by monetary damages. DynCorp's failure to supply the requested records has harmed Northrop Grumman's relationship with its primary customer, the Department of Defense, and has harmed its reputation through negative media coverage.

68. Upon information and belief, DynCorp will not face undue burdens or great practical difficulties if ordered to provide these documents to Northrop Grumman pursuant to the Subcontract.

69. Northrop Grumman seeks an Order compelling DynCorp promptly to provide the requested records to substantiate its invoices to Northrop Grumman.

## COUNT III – BREACH OF CONTRACT FOR REFUSAL TO PRODUCE RECORDS

70. Plaintiffs reallege paragraphs 1 through 55 above and incorporates them as paragraph 70 of Count III.

71. At all relevant times, DynCorp has had a legally enforceable obligation to provide adequate documentation to support its labor costs invoiced to Northrop Grumman.

72. DynCorp has breached its contractual obligation by refusing to provide adequate documentation to substantiate its invoices upon request.

73. Without the supporting documents and information that it has repeatedly requested, Northrop Grumman has been unable adequately to establish that all the labor charges included in DynCorp's invoices are accurate and proper and to invoice the Government for all labor charges submitted by DynCorp.

74. As a result of not being able to submit various invoices to the Government with DynCorp's labor charges, Northrop Grumman has been unable to invoice the Government for its own overhead expenses and negotiated profit on the DynCorp charges. Based, at a minimum, on the time value of money for these lost revenues, Northrop Grumman has been damaged in an amount in excess of the statutory minimum of $25,000.

75. In addition, Northrop Grumman has incurred significant legal and other expenses prior to the filing of this litigation in an attempt to obtain the relevant records from DynCorp and confirm the appropriateness of its invoices. Northrop Grumman has thereby been damaged in an amount in excess of the statutory minimum of $25,000.

COUNT IV – BREACH OF CONTRACT FOR FAILURE TO MAINTAIN RECORDS

76. Plaintiffs reallege paragraphs 1 through 55 above and incorporates them as paragraph 76 of Count IV.

77. At all relevant times, DynCorp has had a contractual obligation to maintain adequate supporting records, including but not limited to resumes and time records, relating to its labor costs invoiced to Northrop Grumman.

78. DynCorp breached its contractual obligation by failing to maintain such records in order to produce them to Northrop Grumman upon request.

79. Northrop Grumman has been unable to invoice the Government for all labor charges submitted by DynCorp because, without the supporting documents and information that

it has repeatedly requested, it has been unable to establish that all the labor charges included in DynCorp's invoices are accurate and proper.

80. As a result of not being able to submit invoices to the Government with all DynCorp's labor charges, Northrop Grumman has been unable to invoice the Government for its own associated overhead expenses and negotiated profit on the DynCorp charges. Based, at a minimum, on the time value of money for these lost revenues, Northrop Grumman has been damaged in an amount in excess of the statutory minimum of $25,000.

### PRAYER FOR RELIEF

A. Northrop Grumman has been injured by the failure of DynCorp to perform its obligations and provide records substantiating its invoices, as required by the Subcontract. DynCorp's failure to supply the requested records has harmed Northrop Grumman's relationship with its primary customer and has harmed its reputation. In addition, Northrop Grumman has incurred significant legal and other expenses prior to the filing of this litigation in an attempt to obtain the relevant records from DynCorp and to ensure the appropriateness of all of DynCorp's invoices.

B. By being unable to submit all invoices to the Government with DynCorp's labor charges, Northrop Grumman has been damaged in the amount of, at a minimum, the lost time value of money for its own overhead expenses and negotiated profit on the DynCorp charges.

C. To the extent that Northrop Grumman is ultimately required to make repayments or issue credits to the Government based on improper invoices submitted by DynCorp, Northrop Grumman will incur additional damages as a result of DynCorp's breaches of the Subcontract.

WHEREFORE, with respect to Count I, plaintiffs request that the Court enter judgment in favor of plaintiffs and against all defendants and declare that the Subcontract requires

DynCorp (1) to maintain the records related to or supporting the invoices it has submitted to Northrop Grumman under all six Task Orders, (2) to provide such records to Northrop Grumman, and (3) to repay Northrop Grumman for any amounts Northrop Grumman may be required to pay the Government as a result of any improper invoices submitted by DynCorp, as well as such other relief as justice may require and the Court may find appropriate;

WHEREFORE, with respect to Count II, plaintiffs request that the Court enter judgment in plaintiffs' favor and against defendants, requiring specific performance of DynCorp in accordance with the terms of Clause 34.b and Articles VIII.A.2(a)(1) and XIV.H.5 of the Subcontract, ordering defendants to produce the underlying records relating to past and current invoices under all six task orders, as well as such other relief as justice may require and the Court may find appropriate;

WHEREFORE, with respect to Count III, plaintiffs request that the Court enter judgment in plaintiffs' favor and against defendants, requiring payment of damages by DynCorp in such amount in excess of the statutory minimum of $25,000 as shall be proved at trial, as well as such other relief as justice may require and the Court may find appropriate;

WHEREFORE, with respect to Count IV, plaintiffs request that the Court enter judgment in plaintiffs' favor and against defendants, requiring payment of damages by DynCorp in such amount in excess of the statutory minimum of $25,000 as shall be proved at trial, as well as such other relief as justice may require and the Court may find appropriate.

Dated: March 13, 2015

By: /s/ Susan R. Podolsky

Susan R. Podolsky
Virginia State Bar No. 27891
spodolsky@podolskylaw.com
1800 Diagonal Road
Suite 600
Alexandria, VA 22314
Telephone: (571) 366-1702
Facsimile: (703) 647-6009

**WILMER CUTLER PICKERING HALE & DORR LLP**

Edward N. Siskel
edward.siskel@wilmerhale.com
Carl J. Nichols
Virginia State Bar No. 43065
carl.nichols@wilmerhale.com
D. Joe Smith
Virginia State Bar No. 76550
joe.smith@wilmerhale.com
Madhu Chugh
madhu.chugh@wilmerhale.com
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**

Anne Bluth Perry
aperry@sheppardmullin.com
2099 Pennsylvania Avenue NW,
Suite 100
Washington, DC 20006
Telephone: (202) 747-1900
Facsimile: (202) 747-1901

*Counsel for Plaintiffs*

21



Northrop Grumman Corporation
Maureen Del Duca
Vice President and Deputy General Counsel
Litigations and Investigations
2980 Fairview Park Drive
Falls Church, VA 22042
Telephone: 703-280-2665
Maureen.DelDuca@ngc.com

June 13, 2014

Laurence Grayer
Senior Vice President, General Counsel and Corporate Secretary
DynCorp International LLC
1700 Old Meadow Road
McLean, VA 22102

Reference: <u>Subcontract No. GCNGS-07-039 (the "Subcontract")</u>

Dear Mr. Grayer:

Northrop Grumman recently obtained a copy of a Department of Defense Inspector General audit report, dated May 13, 2014 (the "Report"). As you know, the Report relates to DynCorp's performance as a subcontractor to Northrop Grumman under the Counter Narco-Terrorism Program Office ("CNTPO") Contract. The Report states, for example, that "DynCorp knowingly applied incorrect labor rates" during its work on the CNTPO program. Northrop Grumman is deeply troubled by the IG's findings.

As you know, Article VI of your Subcontract states explicitly that DynCorp is "responsible for selecting personnel who meet the qualifications as defined in the Statement of Work. . . ." This requirement was repeated in task order agreements (*e.g.*, Task Order 20 requires DynCorp "assign to any effort requiring non-key personnel only personnel who meet or exceed the qualifications of the applicable labor category descriptions as provided in this task order and the Basic Contract."). DynCorp certified it met these and all other contractual requirements in each invoice it submitted to Northrop Grumman.

We ask that you promptly provide detailed assurances that you have met and will continue to meet your contractual obligations. If you have not met your contractual obligations, explain where you have failed to meet them and why and what corrective actions you have implemented to ensure current and future compliance.

The Subcontract requires DynCorp maintain records in support of all direct costs, including labor, substantiate invoices or vouchers, and make these records available to Northrop Grumman upon request. <u>See</u> Articles VIII and XIV, and Clause 34 of Subcontract Clauses T-3392 of the Subcontract.

Northrop Grumman looks forward to a complete response to the requests set forth above by the close of business on 20 June 2014.

The CNTPO Program is an important part of our nation's worldwide narco-terrorism defense and we consider our obligations to perform each task order at the highest possible caliber to be of utmost importance. Northrop Grumman strives to provide unparalleled value and service to all of

Laurence Grayer
DynCorp International LLC
June 13, 2014
Page 2

our Government customers. This requires us, and our subcontractors, to meet the highest standards in all of our dealings with the Government.

Yours truly,

Maureen Del Duca
Vice President & Deputy General Counsel
Northrop Grumman Corporation



Northrop Grumman Corporation
Maureen Del Duca
Vice President and Deputy General Counsel
Litigations and Investigations
2980 Fairview Park Drive
Falls Church, VA 22042
Telephone: 703-280-2665
Maureen.DelDuca@ngc.com

July 31, 2014

Laurence Grayer
Senior Vice President, General Counsel and Corporate Secretary
DynCorp International LLC
1700 Old Meadow Road
McLean, VA 22102

Reference: <u>Subcontract No. GCNGS-07-039 (the "Subcontract")</u>

Dear Mr. Grayer:

I am writing further to my letter of June 13, 2014 to you and in response to the June 26, 2014 letter from David Nadler of Dickstein Shapiro LLP, as counsel to DynCorp.

Mr. Nadler raises a number of points regarding DynCorp's billing practices and performance under the Subcontract as well as concerns about the methodology of the Department of Defense Inspector General ("DOD IG") auditors in connection with the DOD IG's May 13, 2014 report. We believe these points are worthy of discussion between Northrop Grumman and DynCorp, but we are unable to assess their merits and DynCorp's compliance or to have a productive discussion until DynCorp complies with Northrop Grumman's previous requests for information showing that DynCorp has met its contractual obligations along with documentation that substantiates Mr. Nadler's claims.

As you know, the terms of the Subcontract obligate DynCorp to maintain and provide records relating to the work performed at Northrop Grumman's request. This obligation includes records previously sought by Northrop Grumman indicating that DynCorp has met its contractual obligations under the Subcontract with respect to DynCorp's invoicing for labor. The obligation also extends to records that might support the claims in Mr. Nadler's letter.

Accordingly, we ask that DynCorp provide the following materials to Northrop Grumman:

1. All documents and information relating to the education, experience, and qualifications of DynCorp personnel assigned to the CNTPO program.

2. A list of DynCorp employees who did not meet all of the qualifications of the CNTPO labor categories into which they were mapped and an explanation for DynCorp's labor mapping of those employees.

3. A list of all employee hours invoiced in excess of 8 hours in a single day and an explanation for the hours invoiced.

4. All documents and information supporting the statement that DynCorp employees were not required "to be able to perform all of the duties and meet all of the qualifications of the CNTPO labor categories into which they are mapped."

5. All documents and information supporting the statement that DynCorp employees have not been required to meet all labor category qualifications "since the earliest days of the CNTPO program."

6. All documents and information supporting the statement that DynCorp "has been required, within the fixed-price construct of the CNTPO program, and with the knowledge and approval of the Government and Northrop Grumman, to map many employees not by specific qualifications, but by the labor categories that most closely match their actual work and the market rates required to successfully attract and retain the individuals required to perform the work."

7. All documents and information supporting the statement that "[t]he Government and Northrop Grumman recognized the problem with the contract labor categories during the first year of the CNTPO program."

8. All documents and information supporting the statement that the Government and Northrop Grumman "advised [DynCorp] not to propose new labor categories, and directed [DynCorp] to make the work fit into the existing categories."

9. All documents and information supporting the statement that DynCorp "disclosed to the Government and Northrop Grumman the [DynCorp] internal job description and the assigned CNTPO labor category into which it mapped each employee."

10. All documents that purport to supersede or modify Article VI of your Subcontract, which states explicitly that DynCorp "is responsible for selecting personnel who meet the qualifications as defined in the Statement of Work."

11. All documents that purport to supersede or modify the requirement in Task Order 20 that DynCorp "assign to any effort requiring non-key personnel only personnel who meet or exceed the qualifications of the applicable labor category description as provided in this task order and the Basic Contract."

12. All documents and information provided by DynCorp to the Government but not to Northrop Grumman that purportedly provides "more detail" on labor category mapping than in the material DynCorp provided to Northrop Grumman.

13. All documents and information relating to DynCorp's inclusion of the "continued waiver" language in its proposals, including a list of all such proposals that included this language and the date submitted to the Government.

14. All documents and information related to DynCorp's understanding that the DOD IG auditors "were simply tasked with a resumes-to-labor qualifications examination."

15. All correspondence with the DOD IG auditors and other documents demonstrating that "the auditors advised [DynCorp] that, in their view, any review of the labor qualifications waiver was beyond the scope of their assignment."

16. All correspondence with the DOD IG auditors and other documents demonstrating that "[t]he auditors declined [DynCorp's] request for information about the manner in which the [potentially excessive hours invoiced for DynCorp employees] were calculated."

17. All documents and information supporting DynCorp's view that the DOD IG auditors' "calculations ... are incorrect because they are based on the misreading of a spreadsheet which identifies when a given amount of employee time was invoiced, not the longer period over which the hours were actually worked."

18. Documents that demonstrate the correct reading of the hours invoiced by DynCorp.

Northrop Grumman requires a complete set of relevant records in order to conduct a proper evaluation of your compliance and of your claims. That will enable us to engage in a meaningful dialogue about the important issues raised by DynCorp and to assess your compliance with the terms of the Subcontract. Over the past eighteen months, DynCorp has refused to provide Northrop Grumman with information in response to many formal and informal requests made in response to concerns about inconsistencies in DynCorp's billing practices. We fully expect DynCorp to abide by its contractual obligations and provide Northrop Grumman with the requested material.

Accordingly, please provide us with assurances no later than August 8, 2014 that DynCorp will expeditiously produce all requested documents and information requested in this letter and in separate requests made to DynCorp from November 2012 to the present. We request receipt of all such documents no later than August 29, 2014.

Northrop Grumman reserves all of its rights including its rights to indemnification, to seek appropriate reimbursements from DynCorp, and/or to terminate the Subcontract for default in the event that invoices DynCorp submitted for work under the Subcontract were erroneous, false, or fraudulent, or otherwise not in compliance with DynCorp's contractual obligations.

We look forward to discussing this matter with you.

Yours truly,

Maureen Del Duca
Vice President & Deputy General Counsel
Northrop Grumman Corporation



Northrop Grumman Corporation
Maureen Del Duca
Vice President and Deputy General Counsel
Litigations and Investigations
2980 Fairview Park Drive
Falls Church, VA 22042
Telephone: 703-280-2665
Maureen.DelDuca@ngc.com

August 22, 2014

Laurence Grayer
Senior Vice President, General Counsel and Corporate Secretary
DynCorp International LLC
1700 Old Meadow Road
McLean, VA 22102

Reference: <u>Subcontract No. GCNGS-07-039 (the "Subcontract")</u>

Dear Mr. Grayer:

I am writing further to my letters to you of June 13, 2014 and July 31, 2014, and in response to the June 26, 2014 and August 7, 2014 letters from David Nadler of Dickstein Shapiro LLP, as counsel to DynCorp.

We appreciate DynCorp's willingness to produce documents that would support the points made in Mr. Nadler's June 26, 2014 letter regarding DynCorp's billing practices and performance under the Subcontract, as well as concerns DynCorp may have about the methodology used by the Department of Defense Inspector General ("DOD IG") auditors in preparing the DOD IG's May 13, 2014 report (the "Report"). We also appreciate DynCorp's desire to schedule a meeting to discuss these points.

To ensure that any such meeting would be a productive and an efficient use of Northrop Grumman's and DynCorp's time, we would like first to review the documents we requested in our July 31, 2014 letter. As we have explained numerous times in the past, the Subcontract obligates DynCorp to maintain records relating to its work under the Subcontract and provide such records to Northrop Grumman upon request. Given the concerns the IG raised in the Report and DynCorp's apparent disagreement with the DOD IG's conclusions, Northrop Grumman cannot reasonably assess DynCorp's compliance with the terms of the Subcontract without reviewing the requested records.

In addition, the allegations in the recently-unsealed lawsuit against DynCorp in *United States ex rel. Hollis v. DynCorp International Inc.*, Civ. No. 13-698 (E.D. Va. filed June 10, 2013), have only increased Northrop Grumman's concerns about DynCorp's billing practices under the Subcontract and heightened Northrop Grumman's need to review the materials we have previously requested. Although we assume DynCorp will respond to the allegations in the Complaint and defend its conduct in the context of that litigation, Northrop Grumman is troubled by former DynCorp employees' allegations that DynCorp knowingly hired employees whose qualifications did not satisfy the labor category requirements under the Subcontract and billed Northrop Grumman, and accordingly the Government, for those employees under the Subcontract. Equally troubling are allegations that DynCorp employees intentionally failed to disclose information to Northrop Grumman about errors in DynCorp's labor-mapping practices under the Subcontract. *See, e.g.*, Complaint ¶¶ 65-66 (quoting from an October 3, 2012 email

Lawrence Grayer
DynCorp International LLC
August 22, 2014
Page 2

sent by DynCorp employee Ray Nelson to Adele Hollis that allegedly states: "I did not intend to tell [Northrop Grumman] everything – especially that we were using anything incorrectly.").

We trust that DynCorp recognizes the gravity of these allegations, particularly when combined with the IG Report. Consequently, we need to understand DynCorp's explanation for the allegations in the *Hollis* Complaint and how DynCorp can reconcile those allegations with Mr. Nadler's June 26, 2014 letter.

It is imperative that DynCorp produce copies of the records Northrop Grumman has requested no later than August 27, 2014. Northrop Grumman further requests that DynCorp provide a written response, no later than September 5, 2014, reconciling the allegations in the *Hollis* lawsuit with DynCorp's previous statements to Northrop Grumman that DynCorp has fully complied with and continues to comply with the terms of the Subcontract.

Northrop Grumman reserves all of its rights, including its rights to indemnification, to seek appropriate reimbursements from DynCorp, and/or to terminate the Subcontract for default in the event that invoices DynCorp submitted for work under the Subcontract were erroneous, false, or fraudulent, or otherwise not in compliance with DynCorp's contractual obligations.

We look forward to your response.

Yours truly,

Maureen Del Duca
Vice President & Deputy General Counsel
Northrop Grumman Corporation



Northrop Grumman Technical Services, Inc.
100 Sun Ave NE / Suite 300
Albuquerque, NM 87109

October 14, 2014

DynCorp International, LLC
Attn: Robin Ferrier
13500 Heritage Parkway
Fort Worth, TX 76177

Subject: UCA2 – Request for unsanitized data

Ref: CNTPO Contract W9113-070-D-0007-0020
Subcontract# GCNGS-07-039

Dear Robin:

I have received your October 1, 2014 letter in which you state that DynCorp does not agree to comply with our direction to provide additional documentation in support of some of the labor mapping decisions that you made with respect to specific personnel. Some of the requests sought a potential remapping of employees because upon closer examination, the qualifications of DynCorp personnel did not appear to match the Attachment 2 CNTPO Labor Category Descriptions that are an integral part of your contract. In other instances, we sought the submission of supporting documentation, such as copies of licenses and certifications, because we have come to learn that some statements on the CNTPO Labor Category Description Resume Templates that DynCorp has submitted to us in the past are not accurate.

As we are sure you are aware, the landscape under which the parties are operating in performing the task orders under the CNTPO contract has changed. For example, the DoD Inspector General has issued a report finding that DynCorp systematically provided personnel who did not meet the basic labor category requirements set forth in its subcontract with Northrop Grumman. In August of this year, a *qui tam* action against DynCorp was unsealed, which further calls into question the veracity of DynCorp's labor mapping decisions and conduct. The issuance of the IG report and the allegations in the *qui tam* complaint have caused great concern to Northrop Grumman. As a result, we are no longer comfortable relying on DynCorp's representations regarding its compliance with its contractual obligations at face value and thus have undertaken a more robust review of DynCorp's labor mapping decisions.

Your October 1, 2014 letter contains mischaracterizations of our request to DynCorp and the actions of the parties.

First, the meeting on September 18, 2014 was necessitated because DynCorp failed to provide the required supporting documentation demonstrating that its personnel that it had mapped into airworthiness positions had the requisite licenses and certifications. This was true notwithstanding numerous requests starting in July 2014 to provide such licenses and certifications. The meeting was held to address only the airworthiness aspects of the concerns that have been raised.

Second, as we have previously communicated, your subcontract requires compliance both with the labor category requirements in the Performance Work Statement and Attachment 2, the CNTPO Labor Category Descriptions. The labor mapping request provided on September 22, 2014 is the result of a thorough review of the documentation of all personnel from UCA 3, who were not on the August 21, 2013 waiver list. This review identified instances in which the information on the CNTPO Labor Category Description Resume Templates that were provided by DynCorp appeared to be inconsistent with either the labor category qualification requirements or the functional positions of these employees. Additionally, as we analyzed the airworthiness documentation provided by DynCorp, we identified instances in which the information that DynCorp included on the CNTPO Labor Category Description Resume Templates was incorrect. As a result, we have requested copies of licenses and certifications.

Third, while you are correct that we relied upon DynCorp's representations and certifications provided with respect to its invoices and made payments to DynCorp, you are incorrect that this signified final approval or