62. At all relevant times, DynCorp has had a legally enforceable obligation to provide adequate documentation to support its labor costs invoiced to Northrop Grumman.

63. At all relevant times, DynCorp has had a contractual obligation to maintain adequate supporting records, including but not limited to resumes, licenses and certifications, and time records, relating to its labor costs invoiced to Northrop Grumman.

64. DynCorp breached its contractual obligation by failing to maintain such records and by failing to provide them to Northrop Grumman upon request.

65. Without the supporting documents and information that it has repeatedly requested, Northrop Grumman has been unable adequately to establish that the labor charges included in DynCorp's invoices are accurate and proper, consistent with its contractual and legal obligations. In light of DynCorp's failure to provide substantiation for its invoices, and the serious allegations of misconduct by DynCorp reflected in the DOD OIG report and the complaint in *United States ex rel. Hollis and Egan v. DynCorp International, Inc.*, Northrop Grumman cannot accept an unsubstantiated assertion from DynCorp that its invoices are accurate. DynCorp's breach of its contractual obligation to substantiate its invoices has thus caused Northrop Grumman to be unable to certify the accuracy and validity of those charges to the Government. Consequently, Northrop Grumman has been damaged in the amount of the approximately $5 million that Northrop Grumman has paid DynCorp, but has not been able to bill the Government as a result of DynCorp's breach.

## PRAYER FOR RELIEF

A. Northrop Grumman has been injured by the failure of DynCorp to perform its obligations and provide records substantiating its invoices, as required by the Subcontract.

17

DynCorp's failure to supply the requested records has harmed Northrop Grumman's relationship with its primary customer and has harmed its reputation.

B. In addition, Northrop Grumman has incurred and will continue to incur significant legal expenses and related costs to bring this claim for equitable relief and to secure the equitable remedy of specific performance.

C. Due to DynCorp's breach, Northrop Grumman has been unable to recover approximately $5 million in charges it paid to DynCorp, because DynCorp's refusal to provide substantiation for its invoices has prevented Northrop Grumman from being able to invoice the Government with the requisite certification that those labor charges are accurate and proper.

WHEREFORE, with respect to Count I, plaintiff requests that the Court enter judgment in plaintiff's favor and against defendant, requiring specific performance of DynCorp in accordance with the terms of Articles VIII.A.2(a)(1) and XIV.H.5 and Clause 34.b of the Subcontract, ordering defendant to produce the underlying records relating to past and current invoices under all six Task Orders, and awarding Northrop Grumman its attorney's fees and costs incurred in the course of pursuing this equitable remedy, as well as such other relief as justice may require and the Court may find appropriate;

WHEREFORE, with respect to Count II, plaintiff requests that the Court enter judgment in plaintiff's favor and against defendant, requiring payment of damages by DynCorp in the amount of $5 million in paid invoices, as well as such other relief as justice may require and the Court may find appropriate.

Dated: June 29, 2015

By: /s/ Susan R. Podolsky

Susan R. Podolsky
Virginia State Bar No. 27891
spodolsky@podolskylaw.com
1800 Diagonal Road
Suite 600
Alexandria, VA 22314
Telephone: (571) 366-1702
Facsimile: (703) 647-6009

**WILMER CUTLER PICKERING HALE & DORR LLP**
Edward N. Siskel
Admitted *pro hac vice*
edward.siskel@wilmerhale.com
Carl J. Nichols
Virginia State Bar No. 43065
carl.nichols@wilmerhale.com
Madhu Chugh
Admitted *pro hac vice*
madhu.chugh@wilmerhale.com
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
Anne Bluth Perry
Admitted *pro hac vice*
aperry@sheppardmullin.com
2099 Pennsylvania Avenue NW,
Suite 100
Washington, DC 20006
Telephone: (202) 747-1900
Facsimile: (202) 747-1901

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I, Susan R. Podolsky, certify that on June 29, 2015, a copy of the foregoing FIRST AMENDED COMPLAINT was served by agreement via electronic mail with a courtesy copy via U.S. Mail on:

Attison L. Barnes III
Wiley Rein LLP
1776 K Street, N.W.
Washington, D.C. 20006
abarnes@wileyrein.com

and

Richard C. Sullivan, Jr.
Bean Kinney & Korman PC
2300 Wilson Boulevard, Suite 700
Arlington, VA 22201
rsulluivan@beankinney.com

Counsel for Defendant International LLC.

Susan R. Podolsky



Northrop Grumman Corporation
Maureen Del Duca
Vice President and Deputy General Counsel
Litigations and Investigations
2980 Fairview Park Drive
Falls Church, VA 22042
Telephone: 703-280-2685
Maureen.DelDuca@ngc.com

June 13, 2014

Laurence Grayer
Senior Vice President, General Counsel and Corporate Secretary
DynCorp International LLC
1700 Old Meadow Road
McLean, VA 22102

Reference: <u>Subcontract No. GCNGS-07-039 (the "Subcontract")</u>

Dear Mr. Grayer:

Northrop Grumman recently obtained a copy of a Department of Defense Inspector General audit report, dated May 13, 2014 (the "Report"). As you know, the Report relates to DynCorp's performance as a subcontractor to Northrop Grumman under the Counter Narco-Terrorism Program Office ("CNTPO") Contract. The Report states, for example, that "DynCorp knowingly applied incorrect labor rates" during its work on the CNTPO program. Northrop Grumman is deeply troubled by the IG's findings.

As you know, Article VI of your Subcontract states explicitly that DynCorp is "responsible for selecting personnel who meet the qualifications as defined in the Statement of Work. . . ." This requirement was repeated in task order agreements (*e.g.*, Task Order 20 requires DynCorp "assign to any effort requiring non-key personnel only personnel who meet or exceed the qualifications of the applicable labor category descriptions as provided in this task order and the Basic Contract."). DynCorp certified it met these and all other contractual requirements in each invoice it submitted to Northrop Grumman.

We ask that you promptly provide detailed assurances that you have met and will continue to meet your contractual obligations. If you have not met your contractual obligations, explain where you have failed to meet them and why and what corrective actions you have implemented to ensure current and future compliance.

The Subcontract requires DynCorp maintain records in support of all direct costs, including labor, substantiate invoices or vouchers, and make these records available to Northrop Grumman upon request. <u>See</u> Articles VIII and XIV, and Clause 34 of Subcontract Clauses T-3392 of the Subcontract.

Northrop Grumman looks forward to a complete response to the requests set forth above by the close of business on 20 June 2014.

The CNTPO Program is an important part of our nation's worldwide narco-terrorism defense and we consider our obligations to perform each task order at the highest possible caliber to be of utmost importance. Northrop Grumman strives to provide unparalleled value and service to all of

Laurence Grayer
DynCorp International LLC
June 13, 2014
Page 2

our Government customers. This requires us, and our subcontractors, to meet the highest standards in all of our dealings with the Government.

Yours truly,

*[signature]*

Maureen Del Duca
Vice President & Deputy General Counsel
Northrop Grumman Corporation



July 31, 2014

Laurence Grayer
Senior Vice President, General Counsel and Corporate Secretary
DynCorp International LLC
1700 Old Meadow Road
McLean, VA 22102

Reference: <u>Subcontract No. GCNGS-07-039 (the "Subcontract")</u>

Dear Mr. Grayer:

I am writing further to my letter of June 13, 2014 to you and in response to the June 26, 2014 letter from David Nadler of Dickstein Shapiro LLP, as counsel to DynCorp.

Mr. Nadler raises a number of points regarding DynCorp's billing practices and performance under the Subcontract as well as concerns about the methodology of the Department of Defense Inspector General ("DOD IG") auditors in connection with the DOD IG's May 13, 2014 report. We believe these points are worthy of discussion between Northrop Grumman and DynCorp, but we are unable to assess their merits and DynCorp's compliance or to have a productive discussion until DynCorp complies with Northrop Grumman's previous requests for information showing that DynCorp has met its contractual obligations along with documentation that substantiates Mr. Nadler's claims.

As you know, the terms of the Subcontract obligate DynCorp to maintain and provide records relating to the work performed at Northrop Grumman's request. This obligation includes records previously sought by Northrop Grumman indicating that DynCorp has met its contractual obligations under the Subcontract with respect to DynCorp's invoicing for labor. The obligation also extends to records that might support the claims in Mr. Nadler's letter.

Accordingly, we ask that DynCorp provide the following materials to Northrop Grumman:

1. All documents and information relating to the education, experience, and qualifications of DynCorp personnel assigned to the CNTPO program.

2. A list of DynCorp employees who did not meet all of the qualifications of the CNTPO labor categories into which they were mapped and an explanation for DynCorp's labor mapping of those employees.

3. A list of all employee hours invoiced in excess of 8 hours in a single day and an explanation for the hours invoiced.

4. All documents and information supporting the statement that DynCorp employees were not required "to be able to perform all of the duties and meet all of the qualifications of the CNTPO labor categories into which they are mapped."

5. All documents and information supporting the statement that DynCorp employees have not been required to meet all labor category qualifications "since the earliest days of the CNTPO program."

6. All documents and information supporting the statement that DynCorp "has been required, within the fixed-price construct of the CNTPO program, and with the knowledge and approval of the Government and Northrop Grumman, to map many employees not by specific qualifications, but by the labor categories that most closely match their actual work and the market rates required to successfully attract and retain the individuals required to perform the work."

7. All documents and information supporting the statement that "[t]he Government and Northrop Grumman recognized the problem with the contract labor categories during the first year of the CNTPO program."

8. All documents and information supporting the statement that the Government and Northrop Grumman "advised [DynCorp] not to propose new labor categories, and directed [DynCorp] to make the work fit into the existing categories."

9. All documents and information supporting the statement that DynCorp "disclosed to the Government and Northrop Grumman the [DynCorp] internal job description and the assigned CNTPO labor category into which it mapped each employee."

10. All documents that purport to supersede or modify Article VI of your Subcontract, which states explicitly that DynCorp "is responsible for selecting personnel who meet the qualifications as defined in the Statement of Work."

11. All documents that purport to supersede or modify the requirement in Task Order 20 that DynCorp "assign to any effort requiring non-key personnel only personnel who meet or exceed the qualifications of the applicable labor category description as provided in this task order and the Basic Contract."

12. All documents and information provided by DynCorp to the Government but not to Northrop Grumman that purportedly provides "more detail" on labor category mapping than in the material DynCorp provided to Northrop Grumman.

13. All documents and information relating to DynCorp's inclusion of the "continued waiver" language in its proposals, including a list of all such proposals that included this language and the date submitted to the Government.

14. All documents and information related to DynCorp's understanding that the DOD IG auditors "were simply tasked with a resumes-to-labor qualifications examination."

15. All correspondence with the DOD IG auditors and other documents demonstrating that "the auditors advised [DynCorp] that, in their view, any review of the labor qualifications waiver was beyond the scope of their assignment."

16. All correspondence with the DOD IG auditors and other documents demonstrating that "[t]he auditors declined [DynCorp's] request for information about the manner in which the [potentially excessive hours invoiced for DynCorp employees] were calculated."

17. All documents and information supporting DynCorp's view that the DOD IG auditors' "calculations ... are incorrect because they are based on the misreading of a spreadsheet which identifies when a given amount of employee time was invoiced, not the longer period over which the hours were actually worked."

18. Documents that demonstrate the correct reading of the hours invoiced by DynCorp.

Northrop Grumman requires a complete set of relevant records in order to conduct a proper evaluation of your compliance and of your claims. That will enable us to engage in a meaningful dialogue about the important issues raised by DynCorp and to assess your compliance with the terms of the Subcontract. Over the past eighteen months, DynCorp has refused to provide Northrop Grumman with information in response to many formal and informal requests made in response to concerns about inconsistencies in DynCorp's billing practices. We fully expect DynCorp to abide by its contractual obligations and provide Northrop Grumman with the requested material.

Accordingly, please provide us with assurances no later than August 8, 2014 that DynCorp will expeditiously produce all requested documents and information requested in this letter and in separate requests made to DynCorp from November 2012 to the present. We request receipt of all such documents no later than August 29, 2014.

Northrop Grumman reserves all of its rights including its rights to indemnification, to seek appropriate reimbursements from DynCorp, and/or to terminate the Subcontract for default in the event that invoices DynCorp submitted for work under the Subcontract were erroneous, false, or fraudulent, or otherwise not in compliance with DynCorp's contractual obligations.

We look forward to discussing this matter with you.

Yours truly,

Maureen Del Duca
Vice President & Deputy General Counsel
Northrop Grumman Corporation



Northrop Grumman Corporation
Maureen Del Duca
Vice President and Deputy General Counsel
Litigations and Investigations
2980 Fairview Park Drive
Falls Church, VA 22042
Telephone: 703-280-2665
Maureen.DelDuca@ngc.com

August 22, 2014

Laurence Grayer
Senior Vice President, General Counsel and Corporate Secretary
DynCorp International LLC
1700 Old Meadow Road
McLean, VA 22102

**Reference: Subcontract No. GCNGS-07-039 (the "Subcontract")**

Dear Mr. Grayer:

I am writing further to my letters to you of June 13, 2014 and July 31, 2014, and in response to the June 26, 2014 and August 7, 2014 letters from David Nadler of Dickstein Shapiro LLP, as counsel to DynCorp.

We appreciate DynCorp's willingness to produce documents that would support the points made in Mr. Nadler's June 26, 2014 letter regarding DynCorp's billing practices and performance under the Subcontract, as well as concerns DynCorp may have about the methodology used by the Department of Defense Inspector General ("DOD IG") auditors in preparing the DOD IG's May 13, 2014 report (the "Report"). We also appreciate DynCorp's desire to schedule a meeting to discuss these points.

To ensure that any such meeting would be a productive and an efficient use of Northrop Grumman's and DynCorp's time, we would like first to review the documents we requested in our July 31, 2014 letter. As we have explained numerous times in the past, the Subcontract obligates DynCorp to maintain records relating to its work under the Subcontract and provide such records to Northrop Grumman upon request. Given the concerns the IG raised in the Report and DynCorp's apparent disagreement with the DOD IG's conclusions, Northrop Grumman cannot reasonably assess DynCorp's compliance with the terms of the Subcontract without reviewing the requested records.

In addition, the allegations in the recently-unsealed lawsuit against DynCorp in *United States ex rel. Hollis v. DynCorp International Inc.*, Civ. No. 13-698 (E.D. Va. filed June 10, 2013), have only increased Northrop Grumman's concerns about DynCorp's billing practices under the Subcontract and heightened Northrop Grumman's need to review the materials we have previously requested. Although we assume DynCorp will respond to the allegations in the Complaint and defend its conduct in the context of that litigation, Northrop Grumman is troubled by former DynCorp employees' allegations that DynCorp knowingly hired employees whose qualifications did not satisfy the labor category requirements under the Subcontract and billed Northrop Grumman, and accordingly the Government, for those employees under the Subcontract. Equally troubling are allegations that DynCorp employees intentionally failed to disclose information to Northrop Grumman about errors in DynCorp's labor-mapping practices under the Subcontract. *See, e.g.*, Complaint ¶¶ 65-66 (quoting from an October 3, 2012 email

sent by DynCorp employee Ray Nelson to Adele Hollis that allegedly states: "I did not intend to tell [Northrop Grumman] everything – especially that we were using anything incorrectly.").

We trust that DynCorp recognizes the gravity of these allegations, particularly when combined with the IG Report. Consequently, we need to understand DynCorp's explanation for the allegations in the *Hollis* Complaint and how DynCorp can reconcile those allegations with Mr. Nadler's June 26, 2014 letter.

It is imperative that DynCorp produce copies of the records Northrop Grumman has requested no later than August 27, 2014. Northrop Grumman further requests that DynCorp provide a written response, no later than September 5, 2014, reconciling the allegations in the *Hollis* lawsuit with DynCorp's previous statements to Northrop Grumman that DynCorp has fully complied with and continues to comply with the terms of the Subcontract.

Northrop Grumman reserves all of its rights, including its rights to indemnification, to seek appropriate reimbursements from DynCorp, and/or to terminate the Subcontract for default in the event that invoices DynCorp submitted for work under the Subcontract were erroneous, false, or fraudulent, or otherwise not in compliance with DynCorp's contractual obligations.

We look forward to your response.

Yours truly,

Maureen Del Duca
Vice President & Deputy General Counsel
Northrop Grumman Corporation



Northrop Grumman Technical Services, Inc.
100 Sun Ave NE / Suite 300
Albuquerque, NM 87109

October 14, 2014

DynCorp International, LLC
Attn: Robin Ferrier
13500 Heritage Parkway
Fort Worth, TX 76177

Subject: UCA2 – Request for unsanitized data

Ref: CNTPO Contract W9113-070-D-0007-0020
Subcontract# GCNGS-07-039

Dear Robin:

I have received your October 1, 2014 letter in which you state that DynCorp does not agree to comply with our direction to provide additional documentation in support of some of the labor mapping decisions that you made with respect to specific personnel. Some of the requests sought a potential remapping of employees because upon closer examination, the qualifications of DynCorp personnel did not appear to match the Attachment 2 CNTPO Labor Category Descriptions that are an integral part of your contract. In other instances, we sought the submission of supporting documentation, such as copies of licenses and certifications, because we have come to learn that some statements on the CNTPO Labor Category Description Resume Templates that DynCorp has submitted to us in the past are not accurate.

As we are sure you are aware, the landscape under which the parties are operating in performing the task orders under the CNTPO contract has changed. For example, the DoD Inspector General has issued a report finding that DynCorp systematically provided personnel who did not meet the basic labor category requirements set forth in its subcontract with Northrop Grumman. In August of this year, a *qui tam* action against DynCorp was unsealed, which further calls into question the veracity of DynCorp's labor mapping decisions and conduct. The issuance of the IG report and the allegations in the *qui tam* complaint have caused great concern to Northrop Grumman. As a result, we are no longer comfortable relying on DynCorp's representations regarding its compliance with its contractual obligations at face value and thus have undertaken a more robust review of DynCorp's labor mapping decisions.

Your October 1, 2014 letter contains mischaracterizations of our request to DynCorp and the actions of the parties.

First, the meeting on September 18, 2014 was necessitated because DynCorp failed to provide the required supporting documentation demonstrating that its personnel that it had mapped into airworthiness positions had the requisite licenses and certifications. This was true notwithstanding numerous requests starting in July 2014 to provide such licenses and certifications. The meeting was held to address only the airworthiness aspects of the concerns that have been raised.

Second, as we have previously communicated, your subcontract requires compliance both with the labor category requirements in the Performance Work Statement and Attachment 2, the CNTPO Labor Category Descriptions. The labor mapping request provided on September 22, 2014 is the result of a thorough review of the documentation of all personnel from UCA 3, who were not on the August 21, 2013 waiver list. This review identified instances in which the information on the CNTPO Labor Category Description Resume Templates that were provided by DynCorp appeared to be inconsistent with either the labor category qualification requirements or the functional positions of these employees. Additionally, as we analyzed the airworthiness documentation provided by DynCorp, we identified instances in which the information that DynCorp included on the CNTPO Labor Category Description Resume Templates was incorrect. As a result, we have requested copies of licenses and certifications.

Third, while you are correct that we relied upon DynCorp's representations and certifications provided with respect to its invoices and made payments to DynCorp, you are incorrect that this signified final approval or

acceptance of the labor mapping decisions or your compliance with your contractual obligations. Under the express terms of your subcontract, payment of invoices "shall not constitute approval or acceptance of Services or Products rendered. At any time prior to final payment under this order, Buyer may have invoices audited as to validity. Payment of Seller's invoices shall be subject to adjustment for any amounts found upon audit or otherwise to have been improperly invoiced." Subcontract Clause No. 34.b. While approval was provided on an interim basis, that did not preclude further review and revision when errors were identified.

Northrop Grumman is undertaking a review of the compliance of all DynCorp personnel with respect to the labor category requirements in the Performance Work Statement and Attachment 2, the CNTPO Labor Category Descriptions. As Ms. Haynesworth discussed with Mr. Myles last week, the Government has also indicated that, in its view, the August 21, 2013 waiver had limited applicability, both in terms of timeframe and scope, and is no longer effective. It is in our mutual interest to ensure complete compliance with all labor category requirements so that our Customer has complete, accurate, and auditable contract submissions. Please understand that unless and until DynCorp has provided all necessary documentation to verify the accuracy and compliance of DynCorp's historical and present labor mapping and invoices, we shall not make any additional payments because we are unable to assess the proper amounts due.

In order to enable a thorough review of such compliance, we have previously provided DynCorp with copies of CNTPO Labor Category Description Resume Templates, which are to be completed for all personnel who are billing or you expect to be billing under your subcontract. These completed resume templates must clearly and unambiguously demonstrate that the personnel meet the functional duties, experience, and qualification requirements set forth in the Performance Work Statement and the Attachment 2 CNTPO Labor Category Descriptions for the labor categories in which they are placed. In addition, DynCorp must provide copies of all licenses and certifications required either by the Performance Work Statement or the Attachment 2 CNTPO Labor Category Descriptions.

Northrop Grumman is in contact with its Government customer and will be engaged in meetings with them to address the labor mapping issues that have arisen under the CNTPO task orders and, at the appropriate time, as Ms. Haynesworth and Mr. Myles have discussed, may include DynCorp in those discussions. As we have previously discussed with DynCorp, your contract is with Northrop Grumman. All communications with the Government are thus required to flow through us as the prime contractor. DynCorp is not authorized to meet with the Government without Northrop Grumman's consent and such consent has not been provided.

I understand that Ms. Haynesworth and Mr. Myles discussed this matter on Friday, October 3, and I am hopeful that those discussions will lead to greater cooperation between our companies on this matter. Northrop Grumman thus looks forward to receiving a complete response to our September 22, 2014 requests no later than the close of business on October 17, 2014.

The CNTPO Program and mission are important to our nation's worldwide narco-terrorism defense and we consider our obligations to perform each task order at the highest possible caliber to be of utmost importance. Northrop Grumman continues to strive to provide unparalleled value and service to all of our Government customers. This requires us, and you as our subcontractor, to meet the highest standards in all of our dealings with the Government.

Any questions regarding this letter may be addressed to Chris Lawson at Chris.Lawson@ngc.com, 505-998-8263.

Sincerely,

Chris Lawson
Subcontracts Administrator

cc: Randy Munger
Bruce Rietheimer
Nancy Robinson

WILMERHALE

October 21, 2014

Edward N Siskel

+1 202 663 6272 (t)
+1 202 663 6363 (f)
edward.siskel@wilmerhale.com

By E-mail and First Class Mail

David M. Nadler
Dickstein Shapiro LLP
1825 Eye Street NW
Washington, DC 20006-5403
nadlerd@dicksteinshapiro.com

Re: Subcontract No. GCNGS-07-039 (the "Subcontract")

Dear Mr. Nadler:

As you know, Northrop Grumman Corporation ("Northrop Grumman") has repeatedly asked your client, DynCorp International ("DynCorp"), to provide basic information supporting its invoices and justifying its labor mapping assignments. We have sought this information for DynCorp employees currently performing on the contract through repeated requests made by Northrop's Program and Subcontracts Administration personnel, and for those who have performed on the contract in the past through multiple letters to you and DynCorp's in-house counsel. DynCorp has failed to honor these requests—and has made clear its intent to continue refusing to honor them—despite its contractual obligations to do so.

On October 1, 2014, DynCorp notified Northrop Grumman that it would not comply with our request for information regarding the labor mapping of certain employees currently working on the contract, nor would DynCorp consider remapping employees who do not appear to meet the qualifications of the categories into which they are currently mapped. We reiterated our request on October 14, 2014, and explained why it is essential to receive the requested information or an appropriate remapping of DynCorp's personnel, particularly in light of errors and misstatements in the information DynCorp has previously provided. We gave DynCorp until October 17, 2014, to provide the requested information. That date has come and gone with no response from DynCorp. On October 15, 2014, you informed me that DynCorp was unwilling to have a follow-up meeting among outside counsel to discuss our requests for information about DynCorp's historical labor mapping practices and support for its past invoices, until further discussions at the business level.

We are disappointed by your unwillingness to continue what had begun as a productive dialogue among outside counsel. Northrop Grumman finds your stance particularly concerning given that our clients' respective business personnel—James Myles of DynCorp and Linnie Haynesworth of Northrop Grumman—have suspended their dialogue pending a further meeting between counsel. Your refusal to continue our dialogue is disruptive and threatens to derail a process we hoped would lead to an amicable resolution.

Wilmer Cutler Pickering Hale and Dorr LLP, 1875 Pennsylvania Avenue NW, Washington, DC 20006

Beijing    Berlin    Boston    Brussels    Denver    Frankfurt    London    Los Angeles    New York    Oxford    Palo Alto    Washington