DynCorp's failure to substantiate its invoices or justify its labor mapping assignments for task orders issued under the CNTPO Contract constitutes a breach of Articles VI, VIII, and XIV, and Clause No. 34(b) of its Subcontract with Northrop Grumman. We have made clear that Northrop Grumman cannot process DynCorp invoices without the information previously requested that is necessary for Northrop Grumman to evaluate the appropriateness of the charges in any pending and prior invoices.

As DynCorp is aware, Northrop Grumman's examination of DynCorp's labor mapping assignments and errors identified in the information provided by DynCorp in the context of the Government's request for airworthiness licenses and certifications has called into question the accuracy and reliability of DynCorp's labor mapping practices. Northrop Grumman has identified DynCorp personnel currently providing services under the Subcontract who have qualifications that appear to be inconsistent with the functional duties, experience, and qualifications requirements set forth in the applicable Performance Work Statements and the Attachment 2 CNTPO labor category descriptions for the labor categories in which they are placed. In addition, it has recently become clear to Northrop Grumman that several DynCorp personnel performing in labor categories relating to airworthiness lacked the required licenses or certificates despite assurances from DynCorp that these personnel possessed the required qualifications.

Under the terms of the Subcontract (*see, e.g.*, Art. VIII; Art. XIV; Clause No. 34(b)), DynCorp is obligated to provide Northrop Grumman with documents and information required for Northrop Grumman to evaluate the accuracy of DynCorp's invoices. Accordingly, following is a list of essential items, all of which have been requested in the past, that Northrop Grumman requires in order to undertake a proper evaluation of DynCorp's invoices and labor mapping assignments for its personnel:

1. Complete and accurate CNTPO labor category description resume templates for all DynCorp personnel who are currently or have been assigned to the CNTPO program. These resume templates must clearly and unambiguously demonstrate that the personnel, during the period of their performance, meet or have met the functional duties, experience, and qualifications requirements set forth in the applicable Performance Work Statements and the Attachment B CNTPO labor category descriptions for the labor categories in which they were placed.

2. Copies of licenses and certifications required by the applicable Performance Work Statement and/or the Attachment B CNTPO labor category descriptions for all personnel who are performing or have performed under the Subcontract in labor categories that require licenses and/or certifications.

3. A list of all DynCorp employees who do not meet or have not met all of the qualifications of the CNTPO labor categories into which they were mapped and an explanation for DynCorp's labor mapping of those employees, or for why they are not more appropriately mapped into the labor categories Northrop Grumman suggested in its September 22, 2014 letter to Robin Ferrier, DynCorp's Director of Contracts.

4. A list of all employee hours invoiced in excess of 8 hours in a single day and an explanation for the hours invoiced.

In addition, as discussed with your partner, Steve Roman, there are a number of documents that DynCorp has referenced as supportive of its invoicing and labor mapping practices. We require copies of the following documents in order to assess the validity of those claims:

1. All documentation provided by DynCorp to Northrop Grumman and/or to Northrop Grumman's Government customer purporting to show how DynCorp "cross-walked" personnel from DynCorp's internal labor categories to the labor categories of the CNTPO Contract.

2. A list of all DynCorp personnel whose qualifications DynCorp claims were reviewed through the summary qualifications process as well as correspondence to and from Northrop Grumman relating to the proposed personnel assignments. Mr. Roman indicated that he would provide a list of these employees during our meeting on October 7, 2014.

Northrop Grumman requires DynCorp's compliance with these requests no later than October 27, 2014. Upon receiving the requested information, Northrop Grumman will analyze the resumes and other documentation and respond to DynCorp with any questions as expeditiously as possible.

In the event DynCorp does not comply with these requests, Northrop Grumman reserves its rights under the Subcontract to conduct an audit of DynCorp's invoices (*see* Clause No. 34(b)) or to request the Government to conduct an audit of DynCorp's books and records (*see* Art. V(G); Art. VIII(A)(2)(e); *see also* FAR 52.246-4).

Please further note that given DynCorp's breach of the Subcontract, to the extent Northrop Grumman opts to exercise forbearance and not terminate the Subcontract for default at this time, such action does not constitute a waiver of Northrop Grumman's rights under the Subcontract. Northrop Grumman reserves all of its rights, including its rights to indemnification, to seek reimbursement from DynCorp, to terminate the Subcontract for default, and not to issue a

request for proposal to DynCorp in the event the Government grants Northrop Grumman an extension of TORP 76.

Sincerely,

Edward N. Siskel



Northrop Grumman – Technical Services, Inc.
100 Sun Ave NE / Suite 300
Albuquerque, NM 87109

DynCorp International, LLC
Attn: Robin Ferrier
13500 Heritage Parkway
Fort Worth, TX 76177

Subject: Response to November 10, 2014 Correspondence

Ref: CNTPO Contract W9113-070-D-0007-0020
Subcontract# GCNGS-07-039

Dear Robin:

Thank you for your November 10, 2014 letter. We appreciate DynCorp's willingness to submit a proposal for the extension and to take the following steps in response to Northrop Grumman's requests: (1) to provide Northrop Grumman with copies of all resumes previously provided to the Government for DynCorp personnel working on TORP 76; (2) to remap DynCorp personnel who, as set out in my September 22 letter, do not appear to meet the requirements of the CNTPO labor categories in which they were mapped; (3) to remap any personnel listed on the August 2013 waiver whom DynCorp proposes to use during the extension period; and (4) to provide licenses, certifications, or written justification, as applicable, for DynCorp employees mapped into labor categories with license or certification requirements. We also understand, based on recent discussions between outside counsel for DynCorp and Northrop Grumman that DynCorp is willing to remap personnel listed on the August 2013 waiver whose labor is covered by any unpaid invoices, and to provide certain documentation supporting the number of hours previously invoiced.

DynCorp's desire to put conditions on its compliance with contractual obligations continues to be a hindrance to ensuring ongoing, compliant support to the Customer and reaching resolution of the allegations of improper labor mapping and billing of excessive labor hours contained in the DOD IG's May 2014 Audit Report. However, it continues to be our intention to work in good faith with you, and thus Northrop Grumman will proceed as described below.

First, you have requested that DynCorp "not be obligated to commence work during the extension period until [DynCorp] receives written notice from [Northrop Grumman] that the Customer approves the mapping for each [DynCorp] employee." As I am sure you recognize, Northrop Grumman cannot commit the Customer to take particular actions to approve DynCorp's labor mapping decisions. However, as stated in discussions with counsel, Northrop Grumman is ready to assist DynCorp in assessing how the education and experience of proposed personnel meet or do not meet the qualification requirements of particular labor categories.

In addition, Northrop Grumman is currently in the process of explaining fully to the Customer the approach being taken by Northrop Grumman and its subcontractors to determine compliance with labor category requirements. While we will seek to obtain the Customer's endorsement of that approach, Northrop Grumman cannot obligate the Customer to provide such endorsement.

Second, your letter asks Northrop Grumman, upon the receipt of resumes previously provided to the Government, to "pay within ten days all presently submitted [DynCorp] invoices for Other Direct Costs and all Labor invoices presently submitted for time charged by [DynCorp] employees who are on the August 2013 waiver list or previously approved by [Northrop Grumman] through the QSF Process." Northrop Grumman is and has always been prepared to pay allowable amounts in invoices from DynCorp following the provision of necessary documentation to verify the accuracy and compliance of DynCorp's historical and present labor mapping and charges. Without the requested information, Northrop Grumman has been unable to assess the proper amounts due and, hence, to make any additional payments or pass on those costs to the Customer.

Despite the further risk it poses to Northrop Grumman, as a further demonstration of our good faith and in the spirit of continued cooperation, Northrop Grumman is willing to proceed with payment on allowable amounts for Other Direct Costs invoiced on TORP 76 as of the date of this letter. Northrop Grumman will begin to process for payment those amounts once the referenced resumes are received, which we understand from your outside counsel totals approximately 400 resumes. Payment on the earliest received invoice with Other Direct Costs would occur within a week of receipt of the resumes, and the remainder of the invoiced amounts for ODCs over the course of the subsequent couple of weeks provided that DynCorp continues progress on and completes the remapping and documentation commitments delineated in the first paragraph of this letter during that time.

Though willing to proceed as described with Other Direct Costs, Northrop Grumman is not in a position to commit to payment for labor amounts invoiced by DynCorp until DynCorp provides all the requested data in the next several weeks, cooperates with Northrop Grumman in the analysis of this information in relation to the labor categories and amounts previously paid, and, potentially, assists in further interactions with the Customer. Northrop Grumman will begin its analysis expeditiously as the requested information is received. This analysis will likely require further interaction between the companies, and possibly even the need for additional information. Cooperation from DynCorp is critical for Northrop Grumman to proceed with assessing the propriety of labor charges on TORP 76.

Please note that, to the extent Northrop Grumman opts to exercise forbearance in enforcing or exercising any rights under the Subcontract or otherwise, including not terminating the Subcontract for default for failure to provide the requested information, such action does not constitute a waiver of Northrop Grumman's rights under the Subcontract and Northrop Grumman reserves all of its rights, including its rights to indemnification and to seek reimbursement from DynCorp. In addition, regardless of any payments Northrop Grumman may make to DynCorp, Northrop Grumman continues to reserve its rights to set off from amounts otherwise due for any prior overpayments, to hold DynCorp accountable under the terms of the Subcontract, including, but not limited to, any rights Northrop Grumman may hold in the event of an adverse judicial finding against DynCorp, any related settlement, or any request or demand by the Government for reimbursement based on charges submitted by DynCorp.

In light of the foregoing, we ask for confirmation no later than 10:00 AM Eastern Time on November 17, 2014, of DynCorp's agreement on proceeding together as described above and commitment to performing work on TORP 76 during the extension period from January 1, 2015 through February 28, 2015.

Sincerely,

*[signature: Chris Lawson]*

Chris Lawson
Subcontracts Administrator

cc:   Randy Munger (Northrop Grumman)
      Bruce Rietheimer (Northrop Grumman)
      Nancy Robinson (Northrop Grumman)
      Keith Buckner (DynCorp)



Northrop Grumman – Technical Services, Inc.
100 Sun Ave NE / Suite 300
Albuquerque, NM 87109

November 20, 2014

DynCorp International, LLC
Attn:   Robin Ferrier
13500 Heritage Parkway
Fort Worth, TX 76177

Subject:        Response to November 17, 2014 Correspondence

Ref:            CNTPO Contract W9113-070-D-0007-0020
                Subcontract# GCNGS-07-039

Dear Robin:

I write in response to your November 17, 2014 letter. While we appreciate your recognition of the spirit of cooperation reflected in my November 14, 2014 letter, we are disappointed that DynCorp's response does not reciprocate that cooperation or demonstrate sufficient commitment to ensure continued support to this critical mission. Northrop Grumman, as a responsible contactor, has a duty to take reasonable steps to ensure that all costs included on invoices to the Government are accurate, consistent with the contract, and reflect actual amounts due. Our November 14, 2014 letter carefully considered Northrop Grumman's duties to the Government and thus set forth in detail the minimum requirements to enable Northrop Grumman to make payment on DynCorp's outstanding invoices and to allow DynCorp to participate as a subcontractor in the extension period for TORP 76. Northrop Grumman remains committed to working in good faith with DynCorp to serve the mission of the CNTPO program; however, your letter regrettably suggests that the commitment is not mutual. Instead, DynCorp appears to be imposing conditions on Northrop Grumman that threaten to disrupt Northrop Grumman's obligations to its government customer. As you know, Northrop Grumman's priority is to fulfill the mission of its government customer without any disruption in performance.

Before describing the decisions that Northrop Grumman has made, albeit reluctantly, I want to explain the reasons for Northrop Grumman's rejection of the conditions DynCorp seeks to impose.

First, Northrop Grumman has no ability to bind its government customer. As we stated in our previous letter, we intend to make every effort to ensure that the government customer understands and accepts our approach to labor mapping during the extension period. We cannot require the government, however, to endorse the process used for mapping employees, nor are we willing to have a subcontractor condition when it will agree to perform work based on receiving a written assurance of such endorsement.

Second, we reject your attempt to unilaterally modify the terms of DynCorp's Subcontract with Northrop Grumman. As we have repeatedly informed you, DynCorp has an obligation to substantiate its invoices. To date, DynCorp has failed to do so in breach of its subcontract and its obligations as a responsible Government contractor. Accordingly, for Northrop Grumman to make payment on any DynCorp invoices, DynCorp must provide the requested information, which DynCorp has admitted is readily available to it.

Third, we are troubled by DynCorp's apparent lack of recognition of the seriousness of the concerns raised by the DOD IG Report and the recently unsealed qui tam complaint about the potential impropriety of its historical charges DynCorp has submitted under the Subcontract. Despite these significant concerns, DynCorp simply asserts that, even for employees who need to be remapped during the extension period, DynCorp "will not remap any time for these employees which was included on previously paid invoices." For many months now, Northrop Grumman has requested, and DynCorp has refused to provide, records to support DynCorp's invoicing of labor charges on this Subcontract.

The conditions demanded by DynCorp would make it impossible for Northrop Grumman to proceed in a reasonable working relationship with DynCorp. While Northrop Grumman would prefer to move forward in a productive working relationship with you, DynCorp's currently stated position and conditions are unacceptable. We are still committed to what we offered in our November 14 letter, wherein we stated: "Northrop Grumman is willing to proceed with payment on allowable amounts for Other Direct Costs invoiced on TORP 76 as of the date of this letter. Northrop Grumman will begin to process for payment those amounts once the referenced resumes are received, which we understand from your outside counsel totals approximately 400 resumes. Payment on the earliest received invoice with Other Direct Costs would occur within a week of receipt of the resumes, and the remainder of the invoiced amounts for ODCs over the course of the subsequent couple of weeks provided that DynCorp continues progress on and completes the remapping and documentation commitments delineated in the first paragraph of this letter during that time." However, if DynCorp holds to its position as set forth in paragraph 3 of its November 17, 2014 letter that you "will not remap any time for these employees which was included on previously paid invoices," as reinforced in paragraph 5 of your letter, we will have no alternative but to reject labor portions on all pending invoices submitted by DynCorp. If DynCorp should choose to substantiate its invoices in compliance with the terms of the Subcontract, including the conditions set out in my prior letters to you, Northrop Grumman will consider the remaining portions of invoices for payment in an expeditious manner as I have previously described. If DynCorp does not submit its offering under the terms set forth in our November 14, 2014 letter, we will presume that you are no longer interested in participating as a subcontractor during the extension period beginning January 1, 2015.

Sincerely,

Chris Lawson
Subcontracts Administrator

cc: Randy Munger (Northrop Grumman)
Bruce Rietheimer (Northrop Grumman)
Nancy Robinson (Northrop Grumman)
Keith Buckner (DynCorp)



Northrop Grumman - Technical Services, Inc.
100 Sun Ave NE / Suite 300
Albuquerque, NM 87109

November 26, 2014

DynCorp International, LLC
Attn: Robin Ferrier
13500 Heritage Parkway
Fort Worth, TX 76177

Subject: DynCorp Invoice Status

Ref: CNTPO Contract W9113-070-D-007-0020
Subcontracts# GCNGS-07-039

Dear Mr. Ferrier,

As previously communicated to you in our letter of 20 November 2014, DynCorp's refusal to substantiate its invoices in accordance with the terms of its subcontract has left Northrop Grumman with no alternative but to reject the labor portion of all pending DynCorp invoices. The purpose of this letter is to formally notify you of this action. Additionally you are advised that DynCorp TORP 0076 invoices submitted for Other Direct Costs have been placed in a suspense status pending receipt of the information requested in our 14 November 2014 letter.

We regret having to take this action, however DynCorp's continued refusal to substantiate its invoices and more recently, insistence that Northrop Grumman accept DynCorp's unilateral modification of its subcontract terms as a condition for DynCorp providing the information it is already contractually obligated to provide, has left us with no other viable option.

Please acknowledge receipt of this letter and if you have any questions regarding this letter should be directed to the Chris Lawson.

Will Jones for Chris Lawson

Sr. Subcontracts Manager

cc: Randy Munger (Northrop Grumman)
Bruce Rietheimer (Northrop Grumman)
Nancy Robinson (Northrop Grumman)
Keith Buckner (DynCorp)



Northrop Grumman – Technical Services, Inc.
100 Sun Ave NE / Suite 300
Albuquerque, NM 87109

December 10, 2014

DynCorp International, LLC
Attn: Robin Ferrier
13500 Heritage Parkway
Fort Worth, TX 76177

Subject: Response to December 1, 2014 Correspondence

Ref: CNTPO Contract W9113-070-D-0007-0020
Subcontract# GCNGS-07-039

Dear Robin:

Northrop Grumman is in receipt of your December 1, 2014 letter regarding our decision to reject portions of some of DynCorp's invoices. Northrop Grumman took such action only in response to DynCorp's continued breach of its contractual obligations to provide all reasonable documentation to support its invoices.

Unfortunately, your letter sets forth a series of factual claims that are simply not consistent with the parties' course of dealing or the facts underlying the issues before us. For example, you assert that DynCorp has "regularly shared" with Northrop Grumman and the Government the labor mapping processes and decisions that DynCorp has made and that you have "responded fully to any and all requests about the qualifications of its employees." You similarly represent that you have acted in a manner that is "completely transparent to, and accepted by, both Northrop Grumman and the government." If these assertions were accurate, then DynCorp would have no reservations about providing the supporting documentation that Northrop Grumman has requested, particularly documentation that you have previously provided to the DoD IG.

In any event, Northrop Grumman, in its show of good faith and mutual interest in wanting to make progress on this matter still is prepared to honor the position set forth in its letters of November 14, 2014 and November 20, 2014. I understand that outside counsel for DynCorp and Northrop Grumman are continuing to discuss a path forward so that we can receive the necessary documentation. Should you have any questions regarding this letter, please contact the undersigned at (505) 998-8263.

Sincerely,

Chris Lawson
Subcontracts Administrator

cc: Randy Munger (Northrop Grumman)
Bruce Rietheimer (Northrop Grumman)
Steve White (Northrop Grumman)
Keith Buckner (DynCorp)