demands. DI therefore chose not to join Northrop's proposal for the extension.

### NORTHROP INDUCED DI TO CONTINUE NEGOTIATING BY CONTINUING TO WITHHOLD PAYMENT, BUT THEN ABRUPTLY ABANDONED NEGOTIATIONS AND FILED SUIT

49. In an effort to resolve the dispute with Northrop, and obtain at least partial interim payment for the services it delivered, DI negotiated with Northrop in good faith to produce additional documentation in exchange for Northrop paying the millions of dollars in past-due ODCs.

50. Then, unexpectedly and in an apparent effort to obtain leverage over DI, Northrop filed suit against DI in this Court.

51. Northrop continues to refuse to pay DI's invoices, wrongfully withholding tens of millions of dollars. Northrop has no basis to refuse to pay the invoices, and it cannot invoke setoff because there are no amounts due and owing from DI to Northrop. Indeed the amounts due and owing are from Northrop to DI.

52. To date, Northrop has wrongfully withheld $26,830,364.52 in Direct Labor charges invoiced by DI, as well as $13,690,530.26 in ODCs invoiced by DI.

### COUNT I: BREACH OF CONTRACT – DUTY TO PAY DI INVOICES FOR DIRECT LABOR

53. DI realleges and incorporates each and every allegation set forth above as if fully set forth and restated herein.

54. The Subcontract constitutes a valid and binding contract between the parties.

55. DI provided the "the intended quality and skills of personnel" required to perform the work requested by Northrop under the Subcontract and the Task Orders issued thereunder, and issued invoices to Northrop for services performed.

56. Under the Subcontract, Northrop must accept or reject DI's invoices, but – contrary to the terms of the Subcontract – Northrop instead withheld payment from DI while demanding additional information and significant retroactive changes to the parties' agreed-upon approach to the work and invoices.

57. Northrop breached its duty to pay DI for services and other support consistent with the Subcontract's terms.

58. Northrop's decision to reject "the labor portion of all pending" DI invoices constitutes a breach of Northrop's duty to pay DI for services and other support consistent with the Subcontract's terms.

59. DI has suffered damages as a result of Northrop's breach in an amount not less than, but not limited to $26,830,364.52, together with interest thereon.

### COUNT II: BREACH OF CONTRACT – DUTY TO PAY INVOICES FOR ODCS

60. DI realleges and incorporates each and every allegation set forth above as if fully set forth and restated herein.

61. The Subcontract constitutes a valid and binding contract between the parties.

62. The Subcontract and associated task orders and purchase orders obligate Northrop to review and either reject DI's invoices within seven (7) days, or make payment within 33 days.

63. DI performed the work requested by Northrop under the Subcontract and the Task Orders issued thereunder and provided the "the intended quality and skills of personnel" contemplated under the Subcontract. DI also incurred significant ODCs in performing the Subcontract.

64. Northrop's failure and refusal to pay DI for work completed and invoiced under the Subcontract for ODCs by placing them in an indefinite "suspense status" in an effort to force DI to comply with its new direction with respect to labor mapping is a breach of the Subcontract.

65. DI has suffered damages as a result of Northrop's breach in an amount not less than, but not limited to $13,690,530.26, together with interest thereon.

### COUNT III: BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

66. DI realleges and incorporates each and every allegation set forth above as if fully set forth and restated herein.

67. Under Virginia law, the Subcontract contains an implied covenant of the duty of good faith and fair dealing.

68. Among other things, by demanding information not required by the Subcontract or Task Orders, and arbitrarily withholding payment from DI on the basis of unjustified requests for information and retroactive changes to the parties' agreed-upon approach to the work and invoices, Northrop breached the duty of good faith and fair dealing.

69. DI has suffered damages as a result of Northrop's breach, not less than, but not limited to $40,520,894.78, together with interest thereon.

### COUNT IV: QUANTUM MERUIT/UNJUST ENRICHMENT

70. DI realleges and incorporates paragraphs 1-15, 18, 20-22, 24-34, 37, and 41-52 set forth above as if fully set forth and restated herein.

71. In the alternative, Northrop has failed and refused to pay DI for services rendered for which it has retained the benefit.

72. DI conferred a substantial benefit on Northrop by providing the required services and other support necessary and essential to Northrop's successful performance of its Prime Contract.

73. Northrop was aware that DI was conferring this substantial benefit because it received formal and informal reports of DI's performance, and details of the services and other support provided, and should have expected to pay for this benefit necessary to executing Northrop's Prime Contract.

74. Northrop accepted and retained the benefit of DI's services and support throughout the months that Northrop issued repeated broad demands for additional documents and contrary direction to remap and re-invoice for prior work.

75. It would be inequitable for Northrop to retain the benefit of the tens of millions of dollars of services and other support provided consistent with the parties' course of dealing without paying for their value.

76. DI is entitled to the reasonable value of the services and other support provided, consistent with what others in the marketplace for skilled training and logistics services pay for the same or similar work.

WHEREFORE, DI prays for entry of judgment in its favor and against Northrop: (i) awarding damages or, in the alternative, the reasonable value of the services and other support performed, on the Counterclaim in favor of DI against Northrop in an amount of not less than, but not limited to, $40,520,894.78, together with interest thereon; and (ii) awarding such other and further relief as the Court may deem just and proper.

Dated: September 11, 2015

DYNCORP INTERNATIONAL LLC
By counsel

_/s/_

Attison L. Barnes, III (VA Bar No. 30458)
Rand L. Allen (VA Bar No. 16130)
Wiley Rein, LLP
1776 K Street, NW
Washington, DC 20006
Tel: (202) 719-7000
Fax: (202) 719-7049
ABarnes@wileyrein.com
RAllen@wileyrein.com

Richard C. Sullivan, Jr. (VA Bar No. 27907)
Bean Kinney & Korman PC
2300 Wilson Boulevard, Suite 700
Arlington, VA 22201
Tel: (703) 525-4000
Fax: (703) 525-2207
rsullivan@beankinney.com

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 11, 2015, I served the foregoing document by e-mail and hand delivery on the following:

>Susan R. Podolsky
>1800 Diagonal Road
>Suite 600
>Alexandria, VA 22314
>Telephone: (571) 366-1702
>spodolsky@podolskylaw.com
>
>Edward N. Siskel
>Wilmer Cutler Pickering Hale & Dorr LLP
>1875 Pennsylvania Avenue NW
>Washington, DC 20006
>Telephone: (202) 663-6000
>edward.siskel@wilmerhale.com

and by e-mail and U.S. mail to:

>Anne Bluth Perry
>2099 Pennsylvania Avenue NW, Suite 100
>Washington, DC 20006
>Telephone: (202) 747-1900
>aperry@sheppardmullin.com

*/s/ Attison L. Barnes, III*

Attison L. Barnes, III (VA Bar No. 30458)
Wiley Rein, LLP
1776 K Street, NW
Washington, DC 20006
Tel: (202) 719-7000
Fax: (202) 719-7049
abarnes@wileyrein.com

21