Exhibit 16

VIRGINIA:

# IN THE FAIRFAX COUNTY CIRCUIT COURT

NORTHROP GRUMMAN TECHNICAL )
SERVICES, INC., )
 )
    Plaintiff, )
 )
    v. ) CL No. 2015-3427
 )
DYNCORP INTERNATIONAL LLC, )
 )
    Defendant. )

FILED
COURT SERVICES
2015 DEC -7 PM 2: 21
JOHN T. FREY
CLERK, CIRCUIT COURT
FAIRFAX, VA

## PLAINTIFF'S ANSWER TO DEFENDANT'S COUNTERCLAIM

Northrop Grumman Technical Services, Inc. ("Northrop Grumman"), for its Answer to the Counterclaim of DynCorp International, LLC ("DynCorp"), states as follows:

### RESPONSES TO NUMBERED PARAGRAPHS

1. Northrop Grumman admits that it has a contract with the U.S. Department of Defense ("DOD") Counter Narco-Terrorism Technology Program Office ("CNTPO"), under which Northrop Grumman has been supporting the United States Government's efforts in Afghanistan to combat the narcotics trade that finances many terrorist organizations ("Prime Contract"). Northrop Grumman admits that it subcontracted with DynCorp to provide personnel and materials in connection with the Prime Contract. Northrop Grumman denies the remaining allegations in paragraph 1.

2. Without the documents Northrop Grumman has requested from DynCorp, Northrop Grumman lacks information or knowledge sufficient to form a belief as to whether the quality of certain services provided was adequate and/or whether Northrop Grumman received all the services reflected in the invoices; therefore the allegations in the first sentence of paragraph 2

are denied. Northrop Grumman admits that DynCorp has submitted and/or attempted to submit unsubstantiated and/or incorrect invoices reflecting services to be provided under the Subcontract, and that Northrop Grumman has paid some of these invoices, subject to adjustment under the Subcontract. Northrop Grumman admits that, due to DynCorp's breach of the Subcontract, it has suspended payment on Defendant's invoices for both labor charges and other direct costs ("ODCs") as of the end of May 2014, and began rejecting the labor portions of Defendant's invoices on November 26, 2014. Except as expressly admitted, Northrop Grumman denies the allegations in paragraph 2.

3. The allegations in paragraph 3 are denied.

4. The allegations in paragraph 4 are denied.

5. Northrop Grumman admits that it has suspended payment on Defendant's invoices for ODCs due to DynCorp's breach of the Subcontract and pursuant to its contractual right to set off amounts owing by DynCorp. Except as expressly admitted, Northrop Grumman denies the allegations in paragraph 5.

6. Without the documents Northrop Grumman has requested from DynCorp, Northrop Grumman lacks information or knowledge sufficient to form a belief as to the qualifications of DynCorp personnel. Northrop Grumman lacks information or knowledge sufficient to form a belief as to the Government's current reliance on DynCorp personnel. Accordingly, the allegations in paragraph 6 are denied.

7. Northrop Grumman admits that some of the CNTPO labor category descriptions did not align well with some of the activities to be performed under the Subcontract. Northrop Grumman admits that the Contracting Officer, in August 2013, acknowledged that a portion of DynCorp employees, who were listed in a document provided to Northrop Grumman by DynCorp

2

and shared with the Government, would not need to meet all of the qualifications in their assigned CNTPO labor category. Except as expressly admitted, Northrop Grumman denies the allegations in paragraph 7.

8. The allegations in paragraph 8 are denied.

9. Northrop Grumman admits that it exchanged correspondence with DynCorp regarding Northrop Grumman's decision to reject portions of DynCorp's invoices due to DynCorp's breach of the Subcontract, and that the decision was taken in response to DynCorp's refusal to provide reasonable documentation to support its invoices. Except as expressly admitted, Northrop Grumman denies the allegations in paragraph 9.

10. The allegations in paragraph 10 are admitted.

11. The allegations in paragraph 11 are admitted.

12. The allegations in paragraph 12 are admitted.

13. The allegations in paragraph 13 are admitted.

14. The allegations in the first sentence of paragraph 14 are admitted, except that Northrop Grumman states that the Prime Contract was awarded to Northrop Grumman's TASC division. Northrop Grumman admits that four other prime contractors were awarded contracts under the CNTPO program. Except as expressly admitted, Northrop Grumman denies the allegations in paragraph 14.

15. The allegations in the first sentence of paragraph 15 are admitted, except that Northrop Grumman states that the Subcontract was numbered GCNGS-07-039. The allegations in the second sentence of paragraph 15 characterize the Performance Work Statement and the Subcontract, which speak for themselves. To the extent the allegations are inconsistent with the

Performance Work Statement or the Subcontract, they are denied. Except as expressly admitted, Northrop Grumman denies the allegations in paragraph 15.

16. Northrop Grumman admits that, with respect to the Prime Contract, only Northrop Grumman had a contractual relationship with the Government, and that DynCorp was not authorized to communicate with the Government without Northrop Grumman's consent with respect to issues covered by the Prime Contract, although at times DynCorp did communicate with the Government without seeking Northrop Grumman's consent. Except as expressly admitted, Northrop Grumman denies the allegations in paragraph 16.

17. Northrop Grumman admits that, pursuant to the Subcontract, it issued six Task Orders to DynCorp: 3, 6, 10, 15, 20, and 21. The allegations in the second and third sentences of paragraph 17 characterize the Task Orders and the Subcontract, which speak for themselves. To the extent the allegations are inconsistent with the Task Orders or the Subcontract, they are denied. Except as expressly admitted, Northrop Grumman denies the allegations in paragraph 17.

18. Northrop Grumman admits that the Subcontract required Defendant to perform aviation training and operational support with respect to rotary aircraft as specified in the Subcontract Task Orders, which speak for themselves. Northrop Grumman admits that Task Order 20 of the Subcontract required Defendant to maintain, sustain, execute, and train operational missions for the Afghan National Army Air Corps and the Afghanistan Ministry of Interior Counter-Narcotics Air Squadron, with respect to Mi-17 helicopters. Northrop Grumman admits that Task Order 20 was the largest Task Order issued to DynCorp, and that it accounted for approximately 90% of DynCorp's invoiced labor hours and charges. Except as expressly admitted, Northrop Grumman denies the allegations in paragraph 18.

19. Northrop Grumman admits that some of the CNTPO labor category descriptions did not align well with some of the activities to be performed under the Subcontract. Except as expressly admitted, Northrop Grumman denies the allegations in paragraph 19.

20. Northrop Grumman admits that it was aware that DynCorp understood that the Government would not add new labor categories. Except as expressly admitted, Northrop Grumman denies the allegations in paragraph 20.

21. The allegations in paragraph 21 are denied.

22. Northrop Grumman admits that, for some, but not all, employees performing work under the Subcontract, at certain points in time, DynCorp provided labor category matrices, sometimes referred to as "crosswalks," that provided the employee's DynCorp job title and the CNTPO labor category to which Defendant mapped the employee. Northrop Grumman admits that, at certain points in time, DynCorp provided documents sometimes referred to as "manning charts" that provided similar information. Northrop Grumman admits that, at certain points in time, it shared this information with the Government. Except as expressly admitted, Northrop Grumman denies the allegations in paragraph 22.

23. Northrop Grumman admits that starting in 2013 DynCorp included the following qualifying language in its proposals: "Our proposal assumes a continued waiver of CNTPO subcontract labor category qualifications for all incumbent personnel who have been proposed to perform on this option. Any new staff that is brought on board after award of this option will meet the CNTPO subcontract labor categories to the extent they can be mapped to labor categories and attendant rates that reflect the type of position required for Task performance. For any new staff that cannot be so mapped, DI will propose a category to NG for approval by the Contracting

5

Officer prior to any staffing." Except as expressly admitted, Northrop Grumman denies the allegations in paragraph 23.

24. Northrop Grumman admits that, for option periods during 2012, 2013, and 2014, DynCorp submitted some task order extension proposals directly to the Government that contained cost information that was not all made available to Northrop Grumman. Northrop Grumman admits that these task order proposals were supposed to include labor mapping information. Except as expressly admitted, Northrop Grumman denies the allegations in paragraph 24.

25. Northrop Grumman admits that in August 2013 it presented a labor matrix to the Contracting Officer that DynCorp provided to Northrop Grumman and that identified the "DI Job Title," "Maps to CNTPO Labor Category," and "Waiver Requested" for some DynCorp employees. Northrop Grumman admits it committed to make specific resumes available upon request from the Contracting Office. Except as expressly admitted, Northrop Grumman denies the allegations in paragraph 25.

26. Northrop Grumman admits that its subcontractors, including DynCorp, were not invited to attend the meeting with the Contracting Officer in August 2013. Northrop Grumman admits that after the meeting it sent DynCorp a memorandum explaining that the Government agreed that some DynCorp personnel would not be required to meet all of the qualifications in their assigned CNTPO labor category. Except as expressly admitted, Northrop Grumman denies the allegations in paragraph 26.

27. The allegations in paragraph 27 characterize the August 26, 2013 Memorandum, which speaks for itself. To the extent the allegations are inconsistent with the August 26, 2013

Memorandum, they are denied. Except as expressly admitted, Northrop Grumman denies the allegations in paragraph 27.

28. Northrop Grumman admits that after August 2013, for some employees, DynCorp submitted documents to Northrop Grumman labeled "Summary Qualifications," and that those documents were supposed to include the employee's DynCorp job title, proposed CNTPO labor category, and a summary of the employee's education and experience. Except as expressly admitted, Northrop Grumman denies the allegations in paragraph 28.

29. The allegations in paragraph 29 are denied.

30. Northrop Grumman denies that DynCorp selected labor categories for its workforce with the full knowledge and approval of the Government or Northrop Grumman. Northrop Grumman lacks information or knowledge sufficient to form a belief as to the truth of the remainder of the allegations in paragraph 30, so they are denied.

31. To the extent a response is required, Northrop Grumman lacks information or knowledge sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 31, so they are denied. The allegations in the second sentence of paragraph 31 characterize the August 26, 2013 Memorandum, which speaks for itself. To the extent the allegations are inconsistent with the August 26, 2013 Memorandum, they are denied. Except as expressly admitted, Northrop Grumman denies the allegations in paragraph 31.

32. Without the documents Northrop Grumman has requested from DynCorp, Northrop Grumman lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 32, so they are denied.

33. Northrop Grumman lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 33, so they are denied.

34. The allegations in paragraph 34 characterize the DOD Inspector General ("IG") Report, which speaks for itself. To the extent the allegations are inconsistent with the DOD IG Report, they are denied. Except as expressly admitted, Northrop Grumman denies the allegations in paragraph 34.

35. The allegations in paragraph 35 characterize the Subcontract and Federal Acquisition Regulation 52.232-25, which speak for themselves. To the extent the allegations are inconsistent with the Subcontract and Federal Acquisition Regulation 52.232-25, they are denied. Except as expressly admitted, Northrop Grumman denies the allegations in paragraph 35.

36. Northrop Grumman admits it suspended payment on Defendant's invoices for both labor charges and ODCs as of the end of May 2014. Except as expressly admitted, Northrop Grumman denies the allegations in paragraph 36.

37. Northrop Grumman admits that the Government purported to rescind the August 2013 waiver, and that Northrop Grumman informed DynCorp of the Government's attempt. Except as expressly admitted, Northrop Grumman denies the allegations in paragraph 37.

38. Northrop Grumman admits it requested DynCorp to provide documents reasonably necessary to substantiate its invoices, and that it requested DynCorp to remap certain employees who did not appear to meet the qualifications of the categories into which they were mapped. Except as expressly admitted, Northrop Grumman denies the allegations in paragraph 38.

39. Northrop Grumman admits that on July 31, 2014, it requested DynCorp to produce 18 categories of documents and information reasonably necessary to substantiate its invoices and in order to conduct a proper evaluation of DynCorp's compliance with the terms of the Subcontract and DynCorp's claims defending its conduct. Except as expressly admitted, Northrop Grumman denies the allegations in paragraph 39.

40. Northrop Grumman admits that it requested that DynCorp provide the licenses and certifications of personnel mapped into airworthiness positions. Except as expressly admitted, Northrop Grumman denies the allegations in paragraph 40.

41. Northrop Grumman admits that it met with DynCorp on September 18, 2014, because DynCorp had failed to provide the required supporting documentation demonstrating that its personnel that it had mapped into airworthiness positions had the requisite licenses and certifications. Except as expressly admitted, Northrop Grumman denies the allegations in paragraph 41.

42. Northrop Grumman admits that it sent a letter on September 22, 2014 notifying DynCorp that a number of DynCorp's personnel did not appear to meet the requirements for the CNTPO labor categories in which they were mapped, and requesting that DynCorp either remap the personnel or provide a justification for the mapping. Northrop Grumman admits that DynCorp requested to begin communicating with the Government directly. Except as expressly admitted, Northrop Grumman denies the allegations in paragraph 42.

43. Northrop Grumman admits that on October 14, 2014 Northrop Grumman sent a letter to DynCorp regarding Northrop Grumman's right to audit DynCorp's documents and indicating that Northrop Grumman would not make additional payments without the requested documentation. The allegations in paragraph 43 characterize that October 14 letter, which speaks for itself. To the extent the allegations are inconsistent with that October 14 letter, they are denied. Except as expressly admitted, Northrop Grumman denies the allegations in paragraph 43.

44. Northrop Grumman admits that on November 26, 2014 Northrop Grumman sent a letter to DynCorp stating that it rejected the labor portion of all pending DynCorp invoices. The allegations in paragraph 44 characterize the November 26 letter, which speaks for itself. To the

9

extent the allegations are inconsistent with the November 26 letter, they are denied. Except as expressly admitted, Northrop Grumman denies the allegations in paragraph 44.

45. Northrop Grumman lacks information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 45, so they are denied.

46. Northrop Grumman admits that on November 6, 2014 it sent DynCorp a letter regarding extension of TORP 0076 from January 1, 2015 through February 28, 2015. The allegations in paragraph 46 characterize the November 6 letter, which speaks for itself. To the extent the allegations are inconsistent with the November 6 letter, they are denied. Except as expressly admitted, Northrop Grumman denies the allegations in paragraph 46.

47. Northrop Grumman admits that on November 14, 2014 it sent DynCorp a letter regarding DynCorp's willingness to submit a proposal for the task order extension. Northrop Grumman admits that on November 17, 2014 DynCorp sent it a letter setting forth terms under which DynCorp would submit a proposal. The allegations in paragraph 47 characterize the November 14 and November 17 letters, which speak for themselves. To the extent the allegations are inconsistent with the November 14 and November 17 letters, they are denied. Except as expressly admitted, Northrop Grumman denies the allegations in paragraph 47.

48. Northrop Grumman admits that on November 17, 2014 DynCorp sent Northrop Grumman a letter setting forth terms under which DynCorp would submit a proposal. Northrop Grumman admits that on November 20, 2014 Northrop Grumman sent DynCorp a letter rejecting the terms DynCorp sought to impose. The allegations in the first and second sentences of paragraph 48 characterize the November 14 and November 17 letters, which speak for themselves. To the extent the allegations in the first and second sentences of paragraph 48 are inconsistent with the referenced November 14 and November 17 letters, they are denied. Northrop Grumman